UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

MARK GASTINEAU,                                    Index No:

     Plaintiff,                                    **COMPLAINT**

-against-

ESPN INC,
ESPN FILMS,
NFL PRODUCTIONS, LLC,
D/B/A NFL FILMS,
NATIONAL FOOTBALL LEAGUE,
JAMES WEINER, and KEN RODGERS,

     Defendants.

---------------------------------------------------------X

The Plaintiff, Mark Gastineau, by his attorneys, THE CASSAR LAW FIRM,

P.C., for his Complaint in this action against the Defendants, alleges as follows:

## NATURE OF THE ACTION

1.     The Defendants produced and published a show called "30 for 30"

entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau,

which included an encounter with Bret Favre without his consent or permission

The Defendants portrayed the Plaintiff, Mark Gastineau, in a manner which was

maliciously false and as a result the Plaintiff, Mark Gastineau, has been attacked

on social media with ridicule, scorn and contempt.

2.     The Plaintiff, Mark Gastineau, is an American former professional

football defensive end who played in the National Football League (NFL) for ten

1

(10) seasons with the New York Jets. During his NFL career, he was named Defensive Player of the Year in 1982 and was the first player to lead the league in sacks in consecutive seasons. The Plaintiff, Mark Gastineau, also received five (5) Pro Bowl and four (4) first-team All-Pro selections. At the time of his retirement, the Plaintiff, Mark Gastineau, held the single-season sack record. For his accomplishments in New York, the Plaintiff, Mark Gastineau, was inducted to the Jets Ring of Honor in 2012.

3.    On or about November 18, 2023 at a Chicago Sports Show, the Plaintiff, Mark Gastineau, was photographed and videotaped recorded without his consent by the Defendants interacting with Brett Favre at memorabilia show behind a curtain in an area of the show not opened to the public.

4.    Brett Favre is also an American former professional football quarterback who played in the National Football League (NFL) for 20 seasons, primarily with the Green Bay Packers. At the time of his retirement, Favre was the NFL leader in passing yards, passing touchdowns, and quarterback wins, and holds the record for interceptions. From 1995 to 1997, he was named Most Valuable Player three times, the most the award was consecutively received. Favre also received 11 Pro Bowl and three first-team All-Pro selections. He was inducted to the Pro Football Hall of Fame in 2016.

5.    During this private encounter November 18, 2023 between Mark
Gastineau and Brett Favre, Gastineau confronted Favre about giving up a sack to
Michael Strahan which broke the single-season sack record held by the Plaintiff,
Mark Gastineau.

6.    Michael Strahan was also a former American professional football
player who played his entire fifteen (15) year professional career as a defensive
end for the New York Giants of the National Football League (NFL). A dominant
pass rusher, Strahan set the record for most NFL single-season quarterback sacks
(which was matched by T. J. Watt in 2021) and helped the Giants win Super Bowl
XLII over the New England Patriots in his final season in 2007.

7.    During this private encounter November 18, 2023 between Mark
Gastineau and Brett Favre, Gastineau was visible up set and emotional with Favre;
however, both Mark Gastineau and Brett Favre shook hands at the commencement
of this conversation.

8.    The Plaintiff, Mark Gastineau, never gave permission or consented to
the Defendants to record or publish this private encounter November 18, 2023
between Mark Gastineau and Brett Favre.

9.    On January 25, 2024, the Plaintiff, Mark Gastineau, and the
Defendants entered into a "Talent Agreement" which required the Plaintiff, Mark

Gastineau, to perform "on-camera appearance services for the program entitled "30 for 30: The New York Sack Exchange."

10.    The Defendants breached the terms of this "Talent Agreement." Paragraph numbered 16 states that this "Agreement shall be governed by and interpreted under the laws of the State of New York without regard to conflict of laws principles."

11.    Under paragraph numbered 16 in the "Talent Agreement" the "parties hereby agree that the state and federal courts in New York shall have jurisdiction over any controversy relating to this Agreement."

12.    In or about November 2024 to the present, the Defendants misused and misappropriated the photographs and recordings of the Plaintiff, Mark Gastineau, on November 18, 2023 for their own commercial advertising, distributing the photographs and recordings for ESPN and NFL Films promotional advertisement for ESPN released the trailer for its "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

13.    During the media campaign to promote released the "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau, the Defendants portrayed the Plaintiff, Mark Gastineau, in a manner which was maliciously false and as a result the Plaintiff, Mark Gastineau, has been attacked on social media with ridicule, scorn and contempt.

4

14.     The reputation and character of the Plaintiff, Mark Gastineau, has been damaged by the misleading and malicious portrayal of the Plaintiff, Mark Gastineau, by the Defendants in the "30 for 30" entitled "The New York Sack Exchange."

15.     During the media campaign to promote released the "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau, the Defendants intentionally and maliciously did not publish Mark Gastineau and Brett Favre shaking hands at the commencement of the conversation on November 18, 2023.

16.     The Defendants then misused and misappropriated the photographs and video tape from November 18, 2023 on its social media accounts X [formerly known as Twitter] and Facebook accounts, all without the Plaintiff, Mark Gastineau, knowledge or approval.

17.     The Defendants have ignored demands that they stop this unlawful activity, and brazenly continues to exploit the Plaintiff, Mark Gastineau, image for commercial gain from November 18, 2023, despite his strenuous objection.

18.     The harm to the Plaintiff, Mark Gastineau, is substantial and is continuous.

19.     The Defendants' actions make them liable for (i) violation of the Lanham Act, 15 U.S.C. § 1051 et seq.; (ii) violation of Plaintiff's right of privacy

and publicity under Sections 50 and 51 of the New York Civil Rights Law; and (iii)

unfair competition under New York Law. Each of these claims arises from the

Defendants" unauthorized use, done knowingly and willfully, of the Plaintiff, Mark

Gastineau, name, picture, image, and likeness on November 18, 2023 for

commercial advertising and other trade purposes within New York State and

elsewhere.

## THE PARTIES

20.     The Plaintiff, Mark Gastineau, is an American former professional

football defensive end who played in the National Football League (NFL) for ten

(10) seasons with the New York Jets. During his NFL career, he was named

Defensive Player of the Year in 1982 and was the first player to lead the league in

sacks in consecutive seasons. The Plaintiff, Mark Gastineau, also received five (5)

Pro Bowl and four first-team All-Pro selections. At the time of his retirement, he

held the single-season sack record. For his accomplishments in New York, the

Plaintiff, Mark Gastineau, was inducted to the Jets Ring of Honor in 2012. He is a

citizen of the State of New Jersey.

21.     The Defendant, NFL Productions, LLC, doing business as NFL Films

is the film and television production company of the National Football League. It

produces commercials, television programs, feature films, and documentaries for

and about the NFL, as well as other unrelated major events and awards shows.

6

NFL Films is based in Mount Laurel, New Jersey. The Defendant, NFL

Productions, LLC, produced and published the show "30 for 30" entitled "The

New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

22.    The Defendant, NFL Productions, LLC, d/b/a NFL Films, is the

leading producer of commercials, television programs, feature films, and

documentaries for and about the NFL which is published on the various platforms

in New York State and the New York City tri-state area. The Defendant, NFL

Productions, LLC, d/b/a NFL Films, produced and published the show "30 for 30"

entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

23.    The Defendant, NFL Productions, LLC, d/b/a NFL Films, heavily

advertises itself, its products and its services widely in all media, including via the

Internet and social media, using, for example, Facebook and Twitter to reach

millions of customers.

24.    The Defendant, The National Football League (NFL), is a professional

American football league composed of thirty-two (32) teams, divided equally

between the American Football Conference (AFC) and the National Football

Conference (NFC). The NFL is one of the major professional sports leagues in the

United States and Canada and the highest professional level of American football

in the world with its headquarters located at 345 Park Avenue, New York, New

York. The Defendant, The National Football League (NFL), produced and

published the show "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

25.    The Defendant, The ESPN Inc., is an American multinational sports media conglomerate majority-owned by the Walt Disney Company, with Hearst Communications as an equity stakeholder. The Defendant, The ESPN Inc., produced and published the show "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

26.    The Defendant, ESPN Films, is an American production company which produces and distributes sports films and documentaries. It is owned by ESPN Inc. The Defendant, ESPN Films, produced and published the show "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

27.    "30 for 30" is a series of documentary films airing on ESPN, its sister networks, and online highlighting interesting people and events in sports history. "30 for 30" produced and published the show "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

28.    The Defendant, James Weiner, is an employee of the other Defendants directed, produced and published the show "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

29.     The Defendant, Ken Rodgers, is an employee of the other Defendants and directed, produced and published the show "30 for 30" entitled "The New York Sack Exchange" featuring the Plaintiff, Mark Gastineau.

## JURISDICTION AND VENUE

30.     The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1338 (civil action arising under statutory trademark law and related unfair competition claims), and under 28 U.S.C. § 1332(a) (diversity) because the amount in controversy exceeds $75,000 (exclusive of interest and costs) and the dispute is between citizens of different states. Jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

31.     This Court has jurisdiction over Defendants because Defendants are, and at all times relevant to this action has been, doing business in the State of New York, having continuous and systematic business contacts with New York carried out with a fair measure of permanence and continuity here.

32.     In particular, the Defendants are registered with the New York Department of State, Division of Corporations, to do business in New York State.

33.     On January 25, 2024, the Plaintiff, Mark Gastineau, and the NFL Productions, LLC entered into a "Talent Agreement" which required the Plaintiff,

Mark Gastineau, to perform "on-camera appearance services for the program entitled "30 for 30: The New York Sack Exchange." The Defendants breached the terms of this "Talent Agreement." Under paragraph numbered 16 of the "Talent Agreement," this "Agreement shall be governed by and interpreted under the laws of the State of New York without regard to conflict of laws principles."

34.     Under paragraph numbered 16 of the "Talent Agreement" the "parties hereby agree that the state and federal courts in New York shall have jurisdiction over any controversy relating to this Agreement."

35.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendants do business in this District, being subject to personal jurisdiction here, and because a substantial part of the events giving rise to Plaintiff's claims in this action occurred in this District.

## FACTS

36.     The Plaintiff is a highly successful former American former professional football defensive end who played in the National Football League (NFL) for ten (10) seasons with the New York Jets.

37.     In addition to his celebrity in the entertainment world, Plaintiff is a founder of and established a scholarship fund through Times Square Church.

38.     As a consequence of his work in the entertainment and philanthropic worlds, Plaintiff is a highly recognized celebrity.

39.     Plaintiff's picture, image and likeness enjoy wide-spread recognition and monetary value. To prevent any diminution of that value, Plaintiff has carefully and deliberately protected his valuable professional name, picture, image, likeness, and persona -- that is, his legally recognized right of privacy and publicity -- from exploitation through unauthorized commercial advertising. Accordingly, when Plaintiff chooses to endorse a product or service, he is highly selective and well compensated.

40.     Furthermore, in connection with the Foundation, Plaintiff carefully authorizes and controls the use of his name, picture, image and likeness for charitable fundraising purposes and other activities of the Foundation.

41.     Plaintiff was never approached by and did not authorize Defendants to license or use Plaintiff's name, picture or image for any purpose, including commercial advertising, sponsorship or endorsement from this private encounter November 18, 2023 between the Plaintiff, Mark Gastineau, and Brett Favre.

42.     On January 25, 2024, the Plaintiff, Mark Gastineau, and the Defendants entered into a "Talent Agreement" which required the Plaintiff, Mark Gastineau, to perform "on-camera appearance services for the program entitled "30 for 30: The New York Sack Exchange."

43.     Under the terms of the "Talent Agreement," this "on-camera appearance services for the program entitled "30 for 30: The New York Sack Exchange" was referred to as the "Project."

44.     Under the terms of the "Talent Agreement," required the Plaintiff, Mark Gastineau, to perform an "on-camera appearance services" included a sit-down interview (the "Interview") and a filming session at the New York Stock Exchange (the "NYSE Shoot").

45.     Under the terms of the "Talent Agreement," the interviews occurred on January 25, 2024 and January 26, 2024 and the "NYSE Shoot" occurred on April 13, 2024.

46.     Under the terms of "Talent Agreement," the "Services Locations" for the interviews occurred at a rental studio in Philadelphia, PA and the "NYSE Shoot" occurred in New York, NY at the New York Stock Exchange.

47.     Under the "Talent Agreement," the duration of Services shall be between five (5) and eight (8) hours, inclusive of the Interview and the NYSE Shoot, with the parties mutually approving the timing of services on the Services Date(s).

48.     Under the terms of the "Talent Agreement," as full consideration for the Services provided by the Plaintiff, Mark Gastineau, and the rights granted

herein, NFL Films will pay a total of Ten Thousand Dollars ($10,000 00) to the Plaintiff, Mark Gastineau.

49.    The recording and the publication of the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre was not included in the "Project" under "Talent Agreement."

50.    Under paragraph numbered 5 in the "Talent Agreement," the Defendants have the right to make or have made any numbered of modifications to the "Project" by editing, modifying, varying, dubbing, adding to, subtracting from and integrating any or all of Talent's performance hereunder, provided that all modified use of the must be approved by the Plaintiff, Mark Gastineau.

51.    The Plaintiff, Mark Gastineau, did not approve the modification of the production to include the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre as part of the "Project." Consequently, the Defendants breached paragraph 5 of the "Talent Agreement."

52.    Under paragraph numbered 9 in the "Talent Agreement," the Defendants represented to the Plaintiff and required the Plaintiff to acknowledge "the great value of the goodwill associated with the National Football League and NFL Films."

53.    Thus, the Defendants represented to the Plaintiff that the production of the "Project" would be consistent to "the great value of the goodwill associated

with the National Football League and NFL Films." The production of the "Project" was inconsistent to "the great value of the goodwill associated with the National Football League and NFL Films." The Defendants portrayed the Plaintiff, Mark Gastineau, in a manner which was maliciously false and as a result the Plaintiff, Mark Gastineau, has been attacked on social media with ridicule, scorn and contempt. Consequently, the Defendants breached paragraph numbered 9 in the "Talent Agreement."

54.    The Defendants portrayed the Plaintiff, Mark Gastineau, in a manner which was maliciously false and as a result the Plaintiff, Mark Gastineau, has been attacked on social media with ridicule, scorn and contempt.

55.    Under paragraph numbered 9 in the "Talent Agreement," the Defendants represented to the Plaintiff and required the Plaintiff to acknowledge "the tremendous public respect and reputation for wholesomeness enjoyed by National Football League and NFL Films." Thus, the Defendants represented to the Plaintiff that the production of the "Project" would be consistent with "the tremendous public respect and reputation for wholesomeness enjoyed by National Football League and NFL Films."

56.    The Defendants portrayed the Plaintiff, Mark Gastineau, in a manner which was maliciously false and as a result the Plaintiff, Mark Gastineau, has been attacked on social media with ridicule, scorn and contempt. The production of the

"Project" was inconsistent with "the tremendous public respect and reputation for wholesomeness enjoyed by National Football League and NFL Films." Consequently, the defendant breached the paragraph numbered 9 of the "Talent Agreement."

57.    Under paragraph numbered 9 in the "Talent Agreement," the Defendants represented to the Plaintiff and required the Plaintiff to "ensure that all elements of [his] Services shall be consistent with such goodwill and reputation for wholesomeness in all respects."

58.    The Defendants portrayed the Plaintiff, Mark Gastineau, in a manner which was maliciously false and as a result the Plaintiff, Mark Gastineau, has been attacked on social media with ridicule, scorn and contempt and thus the Defendants did not permit the Plaintiff, Mark Gastineau, to "ensure that all elements of [his] Services shall be consistent with such goodwill and reputation for wholesomeness in all respects." Consequently, the Defendants breached paragraph numbered 9 in the "Talent Agreement."

59.    Under paragraph numbered 15 in the "Talent Agreement," the Defendants represented to the Plaintiff that at the Plaintiff, Mark Gastineau's request, the Plaintiff, Mark Gastineau, would be "provided with a link to the Project." Prior to the publication of the "Project," the Plaintiff, Mark Gastineau,

requested a "link to the Project" but the Defendants' refused this request.

Consequently, the Defendants breached paragraph 15 in the "Talent Agreement."

60.    Under paragraph numbered 16 in the "Talent Agreement," "[t]his

Agreement sets forth the entire agreement and understanding between [the

Plaintiff, Mark Gastineau] and [the Defendants] as to the subject matter hereof and

supersedes all prior understandings or agreements between them."

61.    The publication of the private encounter on November 18, 2023

between the Plaintiff, Mark Gastineau, and Brett Favre is not "set forth" in the

agreement "as to the subject matter" of the "Project" and therefore was not part of

the "Project." Consequently, the Defendant breached paragraph numbered 16 in the

"Talent Agreement."

62.    In any event, any prior agreement to January 25, 2024 to publish the

private encounter on November 18, 2023 between the Plaintiff, Mark Gastineau,

and Brett Favre was "supersedes all prior understandings or agreements between

them." Thus, any agreement to include the publication of the private encounter on

November 18, 2023 between the Plaintiff, Mark Gastineau, and Brett Favre as part

of the "Project" was "superseded."

63.    Under paragraph numbered 16 in the "Talent Agreement," this

"Agreement shall not be subject to any change or modification, except by the

execution of a written instrument signed by the parties hereto." Thus, any

agreement to include the publication of the private encounter on November 18, 2023 between the Plaintiff, Mark Gastineau, and Brett Favre as part of the "Project" required an "execution of a written instrument signed by the parties hereto."

65.     Under paragraph numbered 16 in the "Talent Agreement," this "Agreement shall be governed by and interpreted under the laws of the State of New York without regard to conflict of laws principles."

66.     Under paragraph numbered 16 in the "Talent Agreement," the "parties hereby agree that the state and federal courts in New York shall have jurisdiction over any controversy relating to this Agreement."

67.     The Defendants engage in commercial advertising of its company, goods, and services using social media sites, including Facebook, X, Pinterest, and others.

## FIRST CLAIM
### (Section 43(a) of the Lanham Act)

68.     The Plaintiff repeats, realleges, and incorporates by reference the above allegations in all of the paragraphs above as if fully set forth herein.

69.     The Defendants have in commerce made a false or misleading representation of fact in connection with goods or services that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services.

Gastineau and Brett Favre was willful, malicious and in conscious disregard of Plaintiff's rights.

79.    The Defendants' conduct violates the Plaintiff's rights under Sections 50 and 51 of the Civil Rights Law of the State of New York.

80.    As a result of Defendants' unauthorized use of the Plaintiff's name, picture, image, and likeness of the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre, the Plaintiff has been, and continues to be, damaged.

81.    The Defendants have purposefully used the Plaintiff's name, picture, image, and likeness of the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre in a manner that it knew to be unlawful pursuant to Sections 50 and 51 of the New York Civil Rights Law. The Defendant knew it was required to obtain the Plaintiff's consent for its use of his name and the recording of the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre. The Defendants never sought such consent.

82.    The Plaintiff is entitled to recover from the Defendants all damages for his injuries sustained by reason of the Defendants' unlawful actions, as well as exemplary and punitive damages, under Section 51 of the New York Civil Rights Law in such amounts to be determined at trial.

83.     Furthermore, the Plaintiff has no adequate remedy at law to compensate his fully for the injury caused by the Defendant's unlawful acts and which would be caused by any further infringement of the Plaintiff's rights. Accordingly, the Court should enjoin Defendants from committing future unlawful acts and infringements as alleged here.

### THIRD CLAIM
### (Common Law Unfair Competition)

84.     The Plaintiff repeats, realleges, and incorporates by reference all of above allegations of paragraphs above as if fully set forth herein.

85.     The Defendants actions alleged herein constitute unfair competition within the State of New York and in violation of New York law because Defendants acted intentionally to mislead and confuse consumers or caused a likelihood of consumer confusion and acted in bad faith.

86.     The Plaintiff carefully monitors and controls the valuable commercial use of his name, picture, image, and likeness.

87.     The Defendants social media platforms prominently feature the recording of the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre in a manner that misleads and confuses consumers.

88.     The Defendants acted in bad faith by publishing the recording of the private encounter on November 18, 2023 and falsely imply that Plaintiff's valuable endorsement rights were granted to Defendants -- even though they were not and

by using Plaintiff's name in conjunction with multiple links to commercial advertising for Defendants' products and services.

89.    As a direct and proximate result of Defendants' acts of unfair competition, the Plaintiff has been, and continues to be, damaged, and is entitled to recover from Defendants damages in such amount to be determined at trial.

90.    The Defendants' acts of unfair competition were willful, malicious and in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages.

91.    Furthermore, Plaintiff has no adequate remedy at law to compensate his fully for the injury caused by Defendants' unlawful acts and which would be caused by any further infringement of Plaintiff's rights. Accordingly, the Court should enjoin Defendants from committing future unlawful acts and infringements as alleged here.

**FOURTH CLAIM**
**(Breach of Contract)**

92.    The Plaintiff repeats, realleges, and incorporates by reference all of above allegations of paragraphs above as if fully set forth herein.

93.    On January 25, 2024, the Plaintiff, Mark Gastineau, and the Defendants entered into a "Talent Agreement" which required the Plaintiff, Mark Gastineau, to perform "on-camera appearance services for the program entitled "30 for 30: The New York Sack Exchange."

94.    The Defendants breached their obligations under the "Talent Agreement."

95.    As a direct, proximate and legal result of the Defendants' breaches of the "Talent Agreement" with the Plaintiff, the Plaintiff incurred damages in an amount according to proof at trial. The Plaintiff also suffered consequential damages and lost profits from the harm caused by the Defendants.

## FIFTH CAUSE OF ACTION
### (For Tortious Breach of the Implied Covenant of Good Faith and Fair)

96.    The Plaintiff incorporates herein each preceding paragraph of this Complaint as though fully set forth herein.

97.    The Plaintiff have duly performed each and every condition, covenant and promise required of them under the "Talent Agreement" with the Defendants.

98.    The Defendants, at all material times, had a duty to act fairly and in good faith towards the Plaintiff in carrying out the Defendants' responsibilities under the "Talent Agreement."

99.    The Defendants were under a duty pursuant to the implied covenant of good faith and fair dealing to act in good faith and deal fairly with the Plaintiff under the "Talent Agreement."

100.    The Defendants have an obligation in good faith to inform the Plaintiff of its intention to publish the recording of the private encounter on

70.    The Defendants' commercial advertising campaigns on the Internet and in social media are aimed and occur across state lines in the New York metropolitan area, including New York, New Jersey, Connecticut, and via the Internet to all fifty (50) states and internationally.

71.    The Plaintiff has not authorized Defendants to use his valuable name, picture, image, or likeness of the private encounter on November 18, 2023 between the Plaintiff, Mark Gastineau,  and Brett Favre.

70.    The Defendants use of the Plaintiff's name, picture, image, and likeness falsely of the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre implies that Plaintiff sponsors, endorses, or is affiliated with Defendants' goods and services and is likely to cause consumer confusion, and therefore constitutes false advertising and unfair competition.

72.    The Defendants' acts have been willful, knowing, deliberate, and intended to benefit Defendants at the Plaintiff's expense.

73.    As a direct and proximate result of Defendants' unlawful acts, Plaintiff has been and continues to be damaged. Plaintiff has suffered economic and reputational injury flowing directly from Defendants' unlawful acts, including reputational injury resulting from false endorsement of Defendants' services and products which deprived Plaintiff of his valuable right to select what endorsements to grant, including and how those endorsements are presented to and perceived by

the public, as evidenced by comments on Defendants' social media platforms and elsewhere, all of which directly damage Plaintiff's ability to control and negotiate endorsement agreements and his valuable rights.

74.    The Plaintiff is entitled to recover from Defendants compensatory damages, Defendants' profits resulting from its unlawful conduct, treble damages and reasonable attorney fees and costs in such amounts to be determined at trial.

75.    Furthermore, the Plaintiff has no adequate remedy at law to compensate his fully for the injury caused by Defendants' unlawful acts and which would be caused by any further infringement of Plaintiff's rights. Accordingly, the Court should enjoin Defendants from committing future unlawful acts and infringements as alleged here.

## SECOND CLAIM
**(Violation of New York Civil Rights Law Sections 50 and 51)**

76.    The Plaintiff repeats, realleges, and incorporates by reference the all the allegations of paragraphs above as if fully set forth herein.

77.    The Defendants has used the Plaintiff's name, picture, image and likeness of the private encounter on November 18, 2023 between Mark Gastineau and Brett Favre within the State of New York for advertising purposes or for the purpose of trade without the Plaintiff's consent.

78.    The Defendants' use of the Plaintiff's name, picture, image and likeness of the private encounter from November 18, 2023 between Mark

November 18, 2023. The Defendants have failed to so inform the Plaintiff do so
and have acted in bad faith.

101.    The Defendants have an obligation in good faith to publish the
Plaintiff and Brett Favre shaking hands at the private encounter on November 18,
2023. The Defendants have failed to do so and have acted in bad faith.

102.    The Defendants acted unreasonably to withhold information from the
plaintiff under the "Talent Agreement" and did so without proper cause.

103.    As a direct, proximate and legal result of the Defendants' Tortious
Breach of the Implied Covenant of Good Faith and Fair dealing under the
agreements, the Plaintiff incurred damages in an amount according to proof at trial.
The Plaintiff also suffered consequential damages and lost profits from the harm
caused by the Defendants.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands judgment against Defendant
as follows:

(a)     On the First Claim under Section 43(a) of the Lanham Act, awarding
Plaintiff
(i) compensatory damages in an amount to be determined at trial not less than an
amount of Twenty-Five Million ($25,000.000.00) Dollars;
(ii) treble damages as authorized by statute; and
(iii) reasonable attorney fees and costs as also authorized by statute;

(b)     On the Second Claim for violation of New York Civil Rights Law Sections
50 and 5 l, awarding Plaintiff

(i) damages for his injuries sustained by reason of Defendants unlawful actions in an amount to be determined at trial not less than an amount of Twenty-Five Million ($25,000.000.00) Dollars;
(ii) exemplary and punitive damages; and
(iii) reasonable attorney fees and costs;

(c)    On the Third Claim for Unfair Competition, awarding Plaintiff
(i) compensatory damages in an amount to be determined at trial in an amount to be determined at trial not less than an amount of Twenty-Five Million ($25,000.000.00) Dollars; and
(ii) exemplary and punitive damages;

(d)    On the Fourth Claim for breach of contract, awarding Plaintiff
(i) compensatory damages in an amount to be determined at trial in an amount to be determined at trial not less than an amount of Twenty-Five Million ($25,000.000.00) Dollars; and
(ii) exemplary and punitive damages;

(e)    On the Fifth Claim for Tortious Breach of the Implied Covenant of Good Faith and Fair, awarding Plaintiff
(i) compensatory damages in an amount to be determined at trial in an amount to be determined at trial not less than an amount of Twenty-Five Million ($25,000.000.00) Dollars; and
(ii) exemplary and punitive damages;

(f)    On each of the First, Second and Third Claims, permanently enjoining Defendant, and its agents, officers, servants, employees, successors and assigns and all others acting in concert or privity with Defendant, from using, imitating, or copying Plaintiff's name, picture, image, or likeness in connection with any promotion, advertisement, display, sale, or circulation of any services or products, including commercial advertising use, whether express or implied, on the Internet or social media in any form; and

(g)    awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury on all issues triable by right to a jury.

Dated:        Huntington, New York
              February 25, 2025

                                    Yours, etc.,
                                    THE CASSAR LAW FIRM, P.C.
                                    *Christopher J. Cassar, Esq.*
                                    By: Christopher J. Cassar, Esq.
                                    Attorneys for the Plaintiff
                                    13 East Carver Street
                                    Huntington, New York 11743
                                    (631) 271-6596
                                    cjcassar@cassarlaw.com
                                    Cassar File No: 06620

# CERTIFICATION FOR COMPLAINT

STATE OF _New Jersey_

COUNTY OF _Mercer_ ) ss:

MARK GASTINEAU, being duly sworn, deposes and says:

That I am a PLAINTIFF in the within action; I have read the forgoing COMPLAINT and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows: discussions, letters, and records of the PLAINTIFF.

MARK GASTINEAU

Sworn to before me this
_26_ th day of February 2025

Notary Public

WILLIAM GOMEZ
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES 07/22/2027
COMMISSION: #50201610

INDEX NO.:
CASSAR FILE NO: 06620

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK GASTINEAU,

     Plaintiff,

-against-

ESPN INC,
ESPN FILMS,
NFL PRODUCTIONS, LLC,
D/B/A NFL FILMS,
NATIONAL FOOTBALL LEAGUE,
JAMES WEINER, and KEN RODGERS,

     Defendants.

# COMPLAINT

**THE CASSAR LAW FIRM, P.C.**
**Attorneys for the Plaintiff**
**Office and Post Office Address, Telephone**
**13 EAST CARVER STREET**
**HUNTINGTON, NEW YORK 11743**
**(631) 271-6596**
**cjcassar@cassarlaw.com**