# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK GASTINEAU

        Plaintiff,

        v.

ESPN INC., ESPN FILMS, NFL PRODUCTIONS,
LLC D/B/A NFL FILMS, NATIONAL
FOOTBALL LEAGUE, JAMES WEINER, AND
KEN RODGERS,

        Defendants.

Civil Action No. 1:25-CV-02041-PAE

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.     GASTINEAU'S BREACH OF CONTRACT CLAIM SHOULD BE
DISMISSED ................................................................................................................................ 2

    A.     Gastineau Distorts the Plain Language of the Talent Agreement....................................... 3

    B.     Paragraph 9 Does Not Create Grounds for Breach by Defendants..................................... 5

    C.     Gastineau's Remaining Theories of Breach Are Baseless and Counterfactual ................. 6

II.    GASTINEAU'S RIGHT OF PUBLICITY CLAIM STILL FAILS AS A
MATTER OF LAW ..................................................................................................................... 6

    A.     Gastineau Granted His Right of Publicity in Writing......................................................... 6

    B.     Gastineau Fails to Grasp Governing Case Law Concerning Newsworthiness ................... 7

    C.     Gastineau's Alleged "Questions of Fact" Have No Legal Relevance ................................ 9

III.   GASTINEAU'S LANHAM ACT AND UNFAIR COMPETITION CLAIMS
REMAIN DEFICIENT ................................................................................................................ 9

IV.    GASTINEAU WAIVES OPPOSITION TO DEFENDANTS' REMAINING
ARGUMENTS.............................................................................................................................. 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Alfano v. NGHT, Inc.*,
   623 F. Supp. 2d 355 (E.D.N.Y. 2009) ................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 2

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
   708 F. Supp. 3d 385 (S.D.N.Y. 2023) ................................................................... 5

*Brown v. Showtime Networks, Inc.*,
   394 F. Supp. 3d 418 (S.D.N.Y. 2019) ................................................................. 10

*Champlin v. Music Sales Corp.*,
   604 F. Supp. 3d 224 (S.D.N.Y. 2022) ................................................................... 7

*Cummings v. Soul Train Holdings LLC*,
   67 F. Supp. 3d 599 (S.D.N.Y. 2014) ................................................................... 10

*Davis v. High Soc. Mag., Inc.*,
   90 A.D.2d 374 (2d Dep't 1982) ............................................................................. 8

*Electra v. 59 Murray Enters., Inc.*,
   987 F.3d 233 (2d Cir. 2021) ................................................................................... 7

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co.*,
   375 F.3d 168 (2d Cir. 2004) ................................................................................... 3

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
   889 F.2d 1274 (2d Cir. 1989) ................................................................................. 2

*Khozissova v. Ralph Lauren Corp.*,
   228 A.D.3d 508 (1st Dep't 2024) ....................................................................... 8, 9

*L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010) ................................................................................... 2

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
   424 F.3d 195 (2d Cir. 2005) ................................................................................... 4

*Lemerond v. Twentieth Century Fox Film Corp.*,
   2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) ......................................................... 8

*Locus Techs. v. Honeywell Int'l Inc.*,
   632 F. Supp. 3d 341 (S.D.N.Y. 2022) ................................................................... 3

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012) .................................................................. 10

*Malmsteen v. Universal Music Grp., Inc.*,
   940 F. Supp. 2d 123 (S.D.N.Y. 2013) .................................................................. 4

*Man v. Warner Bros. Inc.*,
   317 F. Supp. 50 (S.D.N.Y. 1970) ........................................................................ 8

*Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*,
   94 N.Y.2d 436 (2000) ........................................................................................ 8

*Messenger v. Gruner Jahr Printing & Pub.*,
   208 F.3d 122 (2d Cir. 2000) ............................................................................... 8

*Pincover v. J.P. Morgan Chase Bank, N.A.*,
   592 F. Supp. 3d 212 (S.D.N.Y. 2022) ................................................................ 10

*Stephano v. News Grp. Publications, Inc.*,
   64 N.Y.2d 174 (1984) ........................................................................................ 8

*Titan Sports, Inc. v. Comics World Corp.*,
   870 F.2d 85 (2d Cir. 1989) ................................................................................. 7

*Weil v. Johnson*,
   2002 WL 31972157 (Sup. Ct. N.Y. Cnty. Sept. 27, 2002) ................................ 7

*York v. Ass'n of Bar of City of New York*,
   286 F.3d 122 (2d Cir. 2002) ............................................................................... 2

**Statutes**

N.Y. Civ. R. L. § 50 ............................................................................................. 6, 7

N.Y. Civ. R. L. § 51 ............................................................................................. 6, 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 6, 7, 9

Fed. R. Civ. P. 8 .................................................................................................. 1

## INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint (the "Opposition" or "Opp."), ECF 36, fails to offer a single substantive argument that saves the First Amended Complaint ("FAC"), ECF 20, from dismissal with prejudice. Gastineau nowhere substantively engages with any of the authorities Defendants cite or the grounds for dismissal Defendants articulate in their motion ("Motion"), ECF 32. In the few instances in which Gastineau does attempt to field legal arguments, he does so only in response to the headings of Defendants' Motion and completely avoids the arguments and authorities presented under those headings. This is nothing short of waiver. At bottom, Gastineau's arguments in opposition to Defendants' Motion all fail as a matter of law.

First, Gastineau's breach of contract claim remains deficient because the plain language of the Talent Agreement ("TA"), ECF 18-3, flatly contradicts the interpretations Gastineau offers to support that claim. Second, Gastineau's right of publicity claim fails because the Talent Agreement expressly grants Defendants that right. Nor can Gastineau rescue this claim by mischaracterizing the legal authority on the newsworthiness exception—a well-established doctrine that shields Defendants from liability related to the Film, ECF 18-4. Third, Gastineau fails to allege essential elements of his Lanham Act and unfair competition claims, including any likelihood of confusion or Defendants' bad faith. He also misinterprets and misapplies the *Rogers* test, which exempts Defendants and the Film from Lanham Act liability under the First Amendment. Lastly, Gastineau completely fails to address Defendants' copyright preemption, insufficient service of process, personal jurisdiction, and Fed. R. Civ. P. 8 arguments, opting only to parrot his pleading without offering legal argument. Gastineau has thus waived opposition to these arguments.

Because Gastineau still has not pled any cognizable claims, despite amending his complaint once already, the Court should dismiss the FAC with prejudice.

1

## ARGUMENT

### I.    Gastineau's Breach of Contract Claim Should Be Dismissed

As a threshold matter, the Court can and should dismiss Gastineau's contract claim at the motion to dismiss stage. Gastineau ignores Defendants' arguments and instead simply urges the Court to decide this issue on summary judgment, arguing that the appropriate inquiry is "whether the claimant is entitled to offer evidence to support the claims," not whether the plaintiff will "ultimately prevail." Opp. at 8–9 (quoting *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002)). But as Gastineau's own legal authority recognizes, not all claimants are entitled to obtain discovery to pursue their case. To make it to discovery, a plaintiff must first plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As previously explained, Mot. at 7–8, Gastineau has ***not pleaded any facts*** from which this Court could ***reasonably infer*** that Defendants' breached the Talent Agreement.

Instead, Gastineau broadly contends that the Talent Agreement contains "ambiguous" terms and that Defendants' Motion should therefore be denied. Opp. at 9. But "language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir. 1989)). Gastineau never identifies any specific ambiguity that gives rise to his claims. Gastineau does not even contend that there are factual disputes between the parties concerning the Talent Agreement. Instead, Gastineau repeatedly characterizes the Talent Agreement's language as "plain and unambiguous." *See* Opp. at 2–5.

At best, Gastineau offers competing but implausible interpretations of the contract, all of which flatly contradict the plain language of the Talent Agreement. The Court is therefore not

being asked to "choose between reasonable interpretations," Opp. at 9 (citing *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004)), but rather to reject a wholly unreasonable one. *See Locus Techs. v. Honeywell Int'l Inc.*, 632 F. Supp. 3d 341, 369 (S.D.N.Y. 2022).

### A.    Gastineau Distorts the Plain Language of the Talent Agreement

Gastineau's theory that Defendants breached Paragraph 5 of the Talent Agreement relies on an erroneous reading of multiple provisions. As previously discussed, Mot. at 4, the relevant definitions in the Talent Agreement are unambiguous. "Project" is defined as "the program titled "30 for 30: The New York Sack Exchange," *i.e.*, the full Film. The "Services" that Gastineau (the "Talent") will render for the Project is defined as including "a sit-down interview (the 'Interview')" to occur on January 25 and 26, 2024, "and a filming session at the New York Stock Exchange (the 'NYSE Shoot')" to occur on April 13, 2024. TA at 1. (The Favre Encounter was not referenced in the 2024 Talent Agreement because it occurred in 2023 and was covered in the earlier contract.) Paragraph 5 authorizes NFL Films to modify the Project, "provided that Talent will not have to render any services in connection with the production of such modifications and all modified use of the [performance][1] must be approved by Talent." TA ¶ 5.

Gastineau twists this unambiguous language to argue that Defendants were required to obtain his consent before including footage of the Favre Encounter in the Film. To make this argument, Gastineau engages in a series of unsupportable readings of the Talent Agreement. First, Gastineau argues that the Talent Agreement "defines the 'Project' as the 'Interviews' on January 25, 2024, January 26, 2024 and April 13, 2024." Opp. at 3. *See also* Opp. at 5. Gastineau then

---

[1] Defendants provide the missing word "performance" here. *See* Mot. at 8 n.7. Gastineau argues that there is no missing word and the preceding words "of the" were mistakenly included or, in the alternative, the missing word is actually "Project." Opp. at 11. Determining the missing/extra word(s) is unnecessary because NFL Films did not modify either Gastineau's performance or the Project via the Favre Encounter.

argues that (i) Paragraph 5 limits NFL Films' modification rights of the Project (which he defines as the Interview) because it grants Gastineau the right to approve all modifications to his Interview footage; (ii) his role in the Favre Encounter triggered those approval rights because it constitutes Services in connection with the Interview; and (iii) NFL Films lacked Gastineau's consent to this "modification" even though he voluntarily agreed to record the Favre Encounter. Opp. at 9–10. Gastineau is wrong.

"Project" is ***expressly defined*** in the Talent Agreement as the program titled "30 for 30: The New York Sack Exchange," *i.e.*, the full Film, and not the Interview itself, which is separately defined. TA at 1. As this Court has previously cautioned, "a court must interpret a contract by considering all of its provisions, and 'words and phrases . . . should be given their plain meaning.'" *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013) (Engelmayer, J.) (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir. 2005)). Accordingly, NFL Films had the right to modify any aspect of the Project subject only to Gastineau's right to approve modifications to his own performance of the Services—or under his reading of the provision, modifications to the footage of his Interview. In any event, the Favre Encounter cannot be a modification of Gastineau's performance because it occurred in 2023, long before either the 2024 Interview or the NYSE Shoot. *See* FAC ¶¶ 3, 45.[2]

Gastineau also expressly waived any general approval rights over the Project, including with respect to the use of the Favre Encounter footage through Paragraph 8 of the Talent Agreement. Gastineau contends that the waiver in Paragraph 8—relating to use of his Licensed

---

[2] It is worth noting that because Gastineau defines the Project and his "performance hereunder " as only including the Interview, Opp. at 3, 5, 14, the Favre Encounter—using Gastineau's definition—cannot fall within its scope and *a fortiori* cannot be subject to the approval rights provided in Paragraph 5. This is true even if, as Gastineau speculates, (i) the omitted word in the fifth line of Paragraph 5 is "Project" and not "performance," or (ii) the words "of the" were mistakenly included in the paragraph. Opp. at 11.

Identity[3] (*i.e.,* right of publicity)—does not apply to modifications of his Interview because it only refers to "the 'duration or manner' of the production of the 'Project' and the 'distribution of the of the [sic] finished Project." Opp. at 11. Gastineau's interpretation of this provision overlooks the text pursuant to which he waives any right to inspect or approve "the finished Project." TA ¶ 8. This broad waiver applies to the inclusion of the Favre Encounter in the Film because it is now part of the finished Project, over which Gastineau has no approval rights.

Gastineau's remaining arguments concerning the scope of Paragraph 8 are similarly flawed. Contrary to Gastineau's assertion, there is no conflict between Defendants' proffered interpretation of Paragraph 5 and of Paragraph 8. Opp. at 11–12. On its face, Paragraph 8 broadly waives Gastineau's right to approve uses of his Licensed Identity in connection with the Project—which includes the Favre Encounter—while Paragraph 5 carves out limited approval rights for any modifications to his Interview and NYSE Shoot performances. *See* Mot. at 8–10. Because these terms and provisions are entirely consistent, Gastineau's reliance on *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 708 F. Supp. 3d 385, 403 (S.D.N.Y. 2023) is inapposite.

## B.     Paragraph 9 Does Not Create Grounds for Breach by Defendants

Gastineau still insists that Defendants breached Paragraph 9 when they published footage of the Favre Encounter because that encounter shows Gastineau in a bad light. In pressing this argument, Gastineau continues to ignore Paragraph 9's plain language, which imposes obligations **solely** on Gastineau to ensure that **his** services are consistent with the reputation and goodwill of the NFL. TA ¶ 9. Paragraph 9 imposes no obligation on the NFL vis-à-vis Gastineau and certainly does not create grounds for Gastineau to claim NFL Films committed any breach. *See* Mot. at 11–

---

[3] Defined in Paragraph 2 as "[Gastineau's] name, voice, portrayal, performance, appearance, actions, likeness, and/or biographical information." TA at 1. Gastineau omits the key words "Talent's Licensed Identity" in misquoting Paragraph 8 in his Opposition. Opp. at 12.

12. Any conceivable violation under Paragraph 9 could only lie with Gastineau, not NFL Films. Gastineau's contrary arguments defy all bounds of logic.[4]

### C.    Gastineau's Remaining Theories of Breach Are Baseless and Counterfactual

In contending Defendants breached Paragraphs 15 and 16 of the Talent Agreement, Gastineau simply parrots his allegations in the FAC without offering further argument. Opp. at 14–16. As previously discussed, Mot. at 12–14, Gastineau's allegations contradict the Talent Agreement and he offers no alternative, reasonable interpretation that would support them. Defendants also have not addressed Gastineau's discussion of the implied covenant of good faith and fair dealing, Opp. at 16–17, as he no longer pleads this claim in the FAC.

## II.    Gastineau's Right of Publicity Claim Still Fails as a Matter of Law

Gastineau's right of publicity claim under N.Y. Civ. R. L. §§ 50 and 51 fails because (1) he granted his right of publicity to Defendants under the Talent Agreement; and (2) even if he did not make this grant, the newsworthiness exemption protects Defendants and the Film from liability.

### A.    Gastineau Granted His Right of Publicity in Writing

In response to Defendants' arguments, Gastineau obstinately repeats that he did not give consent for Defendants to use the Favre Encounter but offers no factual or legal support for that contention. Opp. at 17. Gastineau also suggests Defendants' citation to the Talent Agreement is not an "appropriate answer for a pre-answer dismissal under [Fed. R. Civ. P. 12(b)(6)]"—again, without any further explanation. *Id.* at 18. The Court should reject these unsupported contentions.

Gastineau consented to the taping of the Favre Encounter, as is evident from the tape video and sound quality. Mot. at 16. Gastineau also consented to the use of this footage and granted his

---

[4] Gastineau cites several cases here concerning a claim for breach of the implied covenant of good faith and fair dealing. Opp. at 12–13. Those cases are irrelevant because Gastineau has dropped this claim from the FAC, and his reliance on them is misplaced.

right of publicity to Defendants in writing via Paragraph 2 of the Talent Agreement. Therefore, Gastineau's claim should be dismissed as a matter of law under Rule 12(b)(6) because he cannot establish a necessary element: that Defendants lacked consent to use his image and likeness. *See* Mot. at 14–15; *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989) (lack of written consent is necessary pleading element); *Weil v. Johnson*, 2002 WL 31972157, at *4 (Sup. Ct. N.Y. Cnty. Sept. 27, 2002) ("plaintiff's claims under [N.Y. Civ. R. L. §§ 50 and 51] must fail because, as discussed above, plaintiff provided . . . written consents to be filmed"). Citation to the Talent Agreement is entirely appropriate because it is expressly referenced in the FAC. *See Champlin v. Music Sales Corp.*, 604 F. Supp. 3d 224, 232 (S.D.N.Y. 2022) (Engelmayer, J.).

Gastineau also argues that he should prevail on his right of publicity claim because he is a person who "never sought publicity" and whose picture "has been used without his or her consent for trade or advertising purposes." Opp. at 18 (quoting *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 249 (2d Cir. 2021)). This characterization is contradicted by his own allegations in the FAC, where he describes himself as a "highly recognized celebrity" whose "picture, image and likeness enjoy widespread recognition and monetary value," FAC ¶¶ 38–39, and by the Talent Agreement in which he agreed to sit for interviews in an internationally-televised Film for a fee. TA at 1. Gastineau's reliance on *Electra* is patently misplaced.

### B.    Gastineau Fails to Grasp Governing Case Law Concerning Newsworthiness

Gastineau argues that the newsworthiness exception does not apply because Defendants' use of Gastineau's name and likeness was commercial, and any public interest was merely incidental to Defendants' commercial purpose. Opp. at 22. Gastineau offers no support for these allegations and grossly misinterprets governing case law.

As Gastineau correctly notes, "publications concerning newsworthy events or matters of public interest" are exempt from N.Y. Civ. R. L. § 51. *Stephano v. News Grp. Publications, Inc.*,

64 N.Y.2d 174, 184 (1984). "This is true irrespective of the fact that such publications are carried on largely, and even primarily, to make a profit." *Davis v. High Soc. Mag., Inc.*, 90 A.D.2d 374, 379 (2d Dep't 1982)*. The relevant inquiry is the "content of the work," "not the publisher's motive." *See Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 442 (2000) (citing *Stephano*, 64 N.Y.2d at 185).

As a non-fiction, biographical sports documentary about the New York Sack Exchange, of which Gastineau was a key part, "the [F]ilm is plainly newsworthy." *Khozissova v. Ralph Lauren Corp.*, 228 A.D.3d 508, 509 (1st Dep't 2024). "Newsworthy," is construed in the "most liberal and far reaching terms." *Lemerond v. Twentieth Century Fox Film Corp.*, 2008 WL 918579, at *2 (S.D.N.Y. Mar. 31, 2008) (citation omitted). Thus, New York courts routinely hold that films of a biographical, informational, or critical character, such as the Film here, are newsworthy, even when made with a commercial purpose. *See Khozissova*, 228 A.D. 3d at 509 (documentary and related trailer about fashion icon Ralph Lauren); *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) (docudrama about organized crime trial); *Lemerond*, 2008 WL 918579, at *3 (comedic film attempting ironic commentary of American culture); *Man v. Warner Bros. Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) (film about inaugural Woodstock Festival). *See also Messenger v. Gruner Jahr Printing & Pub.*, 208 F.3d 122, 126 (2d Cir. 2000) (collecting cases). To the extent Gastineau argues that promotional materials featuring the Favre Encounter constitute unauthorized advertising under N.Y. Civ. R. L. § 51, such use is also protected as "incidental" because it merely illustrates the Film's newsworthy content. *See Alfano*, 623 F. Supp. 2d at 359 (citations omitted).

Notably, Gastineau does not dispute the Film's overall newsworthiness, focusing instead on the Favre Encounter. Opp. at 20–22. But, as Defendants have explained, as the Film depicts, the Favre Encounter is a key narrative element in Gastineau's legacy and portrays his reaction to

Favre's sack and how his teammates perceived him, including after confronting Favre. Mot. at 16. All this, of course, is directly relevant to the Film's broader story about the New York Sack Exchange, the relationships among its members, and its lasting cultural legacy. *See* Film, generally.

Finally, "[Gastineau's] assertion that [N.Y. Civ. R. L.] § 51 claims cannot be properly dismissed on a pre-answer motion to dismiss is meritless." *Khozissova*, 228 A.D.3d at 510 (noting courts routinely dismiss complaints in similar contexts). Gastineau alleges no facts suggesting the Film is a "disguised advertisement" or that discovery would alter the analysis. *Id.*

### C.    Gastineau's Alleged "Questions of Fact" Have No Legal Relevance

Gastineau urges the Court to refrain from dismissal by conjuring a dispute over "questions of fact" as to his expectation of privacy during the Favre Encounter. Opp. at 22. Once again, the Film demonstrates that Gastineau—who is wearing a microphone—initiated the Favre Encounter in public. And given its express and repeated references in the FAC, the Court can and should consider the footage on this Motion. *See* Mot. at 6. In any case, Gastineau's privacy expectations are of no legal significance to Defendants' legal arguments or Gastineau's claims.

## III.    Gastineau's Lanham Act and Unfair Competition Claims Remain Deficient

Gastineau's arguments in support of his Lanham Act and unfair competition claims lack substance and fail to engage with Defendants' core points. Rather than addressing the deficiencies identified in Defendants' Motion, Gastineau simply reiterates his allegations and asserts that Defendants raise "proof issues" inappropriate for resolution under Rule 12(b)(6). Opp. at 24. Defendants have not disputed that fairly-pled factual allegations should be resolved through discovery. Rather, Defendants correctly point out that Gastineau has failed to plead essential elements of his claims, including a likelihood of confusion and bad faith intent. Mot. at 18–19.

Gastineau's response to Defendants' invocation of the *Rogers* test is similarly deficient. Gastineau does not meaningfully engage with the legal standard or the authorities cited. Instead,

he offers counterintuitive and conclusory assertions. For example, he contends that his name and image lack artistic relevance to the Film despite the Film being in large part, ***about him***. He also asserts the Favre Encounter is somehow not part of the Film nor relevant to its narrative. Opp. at 25. These assertions are directly contradicted by the Film's content and the obvious importance of the Favre Encounter to the themes of the Film. Mot. at 15–16.

Gastineau also argues that the *Rogers* test cannot be applied at the motion to dismiss stage. That is simply incorrect. Courts in this district often dismiss claims under *Rogers* at the pleading stage. *See Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418 (S.D.N.Y. 2019); *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599 (S.D.N.Y. 2014); *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012). The Court should do the same here.

## IV.  Gastineau Waives Opposition to Defendants' Remaining Arguments

Gastineau waives his opposition to Defendants' remaining arguments. On copyright preemption, he offers no response at all. As to insufficient service of process, personal jurisdiction, and the lack of specific allegations against Defendants James Weiner and Ken Rodgers, Gastineau merely repeats conclusory statements from the FAC and fails to engage with Defendants' legal grounds for dismissal. Opp. at 27–28.[5] This lack of substantive opposition amounts to an abandonment of his claims. *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 227 (S.D.N.Y. 2022) (Engelmayer, J.) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citation omitted)). Accordingly, the Court should dismiss all related claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

---

[5] Gastineau explicitly concedes he failed to plead both general and specific personal jurisdiction over Weiner and Rodgers. Opp. at 27 ("Gastineau has done neither here").

Dated: September 11, 2025   Respectfully submitted,

          */s/ Alexander Kaplan*
          Alexander Kaplan
          Jennifer Pariser
          Timothy Chung
          OPPENHEIM + ZEBRAK, LLP
          461 5th Avenue, 19th Floor
          New York, NY 10017
          Telephone: (212) 951-1156
          alex@oandzlaw.com
          jpariser@oandzlaw.com
          tchung@oandzlaw.com

          *Attorneys for Defendants*

11

## <u>CIV. L. R. 7.1(C) CERTIFICATE OF COMPLIANCE</u>

I, Alexander Kaplan, counsel for Defendants in this matter, hereby certify that according to the word count function in Microsoft Word, the Memorandum of Law this certificate is appended to consists of 3419 words, including footnotes and excluding the elements enumerated in Civ. L. R. 7.1(c).

*/s/ Alexander Kaplan*

Alexander Kaplan